**IN THE CIRCUIT COURT OF THE 13TH JUDICIAL CIRCUIT**
**IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

JOSE PORFIRIO LARDIZABAL-CUEVA,

Plaintiff, CASE NO.

vs.

IGLOO PRODUCTS, CORP.,

Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **JOSE PORFIRIO LARDIZABAL-CUEVA ("Plaintiff")**, by and through his undersigned counsel, **JOHNSON BECKER, PLLC** hereby submit the following Complaint and Demand for Jury Trial against Defendant **IGLOO PRODUCTS CORP. ("Defendant" or "Igloo")**, and alleges the following upon personal knowledge and belief, and investigation of counsel:

## NATURE OF THE CASE

1. Defendant designs, manufactures, markets, imports, distributes and sells consumer products, including the subject "Latitude 90 Roller Cooler." (referred to hereafter as "Cooler(s)").

2. On October 10, 2024, Plaintiff and his family were able to return home after Hurricane Milton. Plaintiff needed his tools, which were stored in a

compartment in the back of his Jeep, to get into the house. In order to access them, he had to move the cooler, which was packed and stowed in the rear of the vehicle.

3. Plaintiff placed his right hand on the cooler's small handle and started pulling to shift the cooler towards himself. But as he did so, the cooler began to slide, and Plaintiff quickly reached up with his left hand to steady it. His left index finger happened to settle directly above the cooler's tow handle. As one side of the cooler hit the bed of the trunk, the tow handle was pushed upward, and Jose's finger was caught and crushed between the tow handle and the body of the cooler.

4. The incident occurred as a result of the defective design of the subject Cooler, which allowed Plaintiff's hand to pinched between the tow handle and cooler during the normal, foreseeable use of the product.

5. As a result of the incident, Plaintiff continues to have numbness and pain in his finger, which is attributable to nerve damage.

6. On February 12, 2025, the Consumer Products Safety Commission ("CPSC") announced a recall of more than 1,000,000 of Defendant's Coolers, which includes the subject Cooler, after receiving "**12 reports of fingertip injuries, including fingertip amputations, bone fractures, and lacerations**" as a result of

the tow handle pinching consumers' fingertips against the Coolers; just as it did in this case. [1]

7. Defendant knew or should have known of these defects but has nevertheless put profit ahead of safety by continuing to sell their Coolers to consumers; sold their Coolers with a defective design, despite the extensive knowledge that the aforementioned injuries could and do occur; and failing to warn said consumers of the serious risks posed by the defects.

8. As a direct and proximate result of Defendant's conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

**PLAINTIFF JOSE PORFIRIO LARDIZABAL-CUEVA**

9. Plaintiff is a resident and citizen of the city of Riverview, County of Hillsborough, State of Florida.

10. On or about October 10, 2024, Plaintiff suffered serious and substantial injuries as the direct and proximate result of his finger being crushed between the tow handle and body of the subject Cooler.

---

[1] *See* the CPSC Recall notice from February 12, 2025 (https://www.cpsc.gov/Recalls/2025/Igloo-Recalls-More-Than-One-Million-90-Quart-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards ), a copy of which is attached hereto as Exhibit A.



9/11/2026 9:01 AM Electronically Filed: Hillsborough County/13th Judicial Circuit Page 3

**IGLOO PRODUCTS, CORP.**

11. Defendant Igloo Products Corp. is a Delaware Corporation with its principal place of business located at 777 Igloo Rd, Katy, TX 77494. At all times relevant, Defendants Products, Inc. substantially participated in the distribution, design, manufacture, and sale of the subject Cooler, which caused Plaintiff's injuries and damages.

**JURISDICTION AND VENUE**

12. This Court has personal jurisdiction over Defendant pursuant to Fla. Stat. § 48.193 in that Defendant operated, conducted, engaged in, or carried on a business or business venture(s) within this State, and/or committed tortious acts within this State.

13. Venue in this Court is proper pursuant to Fla. Stat. §§ 47.011 and 47.021 in that Plaintiff resides in Hillsborough County and substantial portions of the causes of action/tortious activity took place in Hillsborough County.

14. The amount in controversy exceeds the sum of fifty thousand ($50,000.00) dollars, exclusive of interest and costs

**FACTUAL BACKGROUND**

15. Defendant designs, manufactures, markets, imports, distributes and sells consumer products, including the subject Cooler at issue in this case.

16. In October 2024, Hurricane Milton struck the southeastern United States. Jose and his family, who lived in Riverview, Florida, were forced to evacuate for their safety. Plaintiff's wife was breastfeeding at the time, so the couple stocked breast milk in the family's Igloo rolling cooler, which they normally used on weekends in the summer.

17. On October 10, 2024, Plaintiff and his family were able to return home. Plaintiff needed his tools, which were stored in a compartment in the back of his Jeep, to get into the house. In order to access them, he had to move the cooler, which was packed and stowed in the rear of the vehicle.

18. Plaintiff placed his right hand on the cooler's small handle and started pulling to shift the cooler towards himself. But as he did so, the cooler began to slide, and Plaintiff quickly reached up with his left hand to steady it. His left index finger happened to settle directly above the cooler's tow handle. As one side of the cooler hit the bed of the trunk, the tow handle was pushed upward, and Jose's finger was caught and crushed between the tow handle and the body of the cooler.

19. As a result of the incident, Plaintiff continues to have numbness and pain in his finger, which is attributable to nerve damage.

20. The incident occurred as a result of the defective design of the subject Cooler, which allowed Plaintiff's hand to pinched between the tow handle and Cooler during the normal, foreseeable use of the product.

21. On February 12, 2025, the Consumer Products Safety Commission ("CPSC") announced a recall of more than 1,000,000 of Defendant's Coolers, which includes the subject Cooler, after receiving "**12 reports of fingertip injuries, including fingertip amputations, bone fractures, and lacerations**" as a result of the tow handle pinching consumers' fingertips against the Coolers; just as it did this case. [2]

22. Defendant knew or should have known of these defects but has nevertheless put profit ahead of safety by continuing to sell their Coolers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to timely recall the dangerously defective Coolers regardless of the risk of significant injuries to Plaintiff and consumers like him.

23. By reason of the forgoing acts or omissions, the above-named Plaintiff and/or his family purchased their Cooler with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for their intended, foreseeable use.

24. However, the aforementioned Cooler was defectively designed by Defendant, placing the Plaintiff, his family, and similar consumers in danger while using the Coolers.

[2] *Id.*

25. Defendants' Coolers possess defects that make them unreasonably dangerous for their intended use by consumers because of the risks of crush injuries described herein.

26. Economic, safer alternative designs were available that could have prevented the towing handle from crushing a consumer's digits against it.

27. As a direct and proximate result of Defendant's intentional concealment of such defects, it's failure to warn consumers of such defects, its failure to timely remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous Cooler, which resulted in significant and painful bodily injuries

28. Consequently, the Plaintiff in this case seeks damages resulting from the use of Defendant's Cooler as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY – DESIGN DEFECT

29. Plaintiff brings his claim for strict products liability - design defect under the consumer expectation test, in that an ordinary, reasonable consumer would not expect that the design of the handle of the subject Cooler would allow a

consumer's digits to be becomes pinched between the tow handle and Cooler during the normal, foreseeable use of the product.

30. At all relevant times, Defendant Igloo Products Corp. was engaged in the design, manufacture, assembly, marketing, distribution, and sale of the subject Cooler.

31. The subject Cooler was defectively designed and unreasonably dangerous for its intended and foreseeable use by consumers, including Plaintiff, in that an ordinary, reasonable consumer would not expect that the design of the handle of the subject Cooler would allow a consumer's digits to be pinched between the tow handle and Cooler during the normal, foreseeable use of the product – for example, during the simple act of sliding the cooler out of a truck.

32. At the time it was sold and when Plaintiff purchased and used it, the Igloo Cooler contained a design defect in its tow handle that created an unreasonable risk of injury. Specifically, due to the defective design in the tow handle, the Cooler failed to operate safely and effectively in a foreseeable and intended manner in that ordinary, reasonable consumer would not expect that the design of the tow handle of the subject Cooler could and would allow a consumer's digits to be pinched between the tow handle and Cooler during the normal, foreseeable use of the product.

33. Defendant was negligent in that it failed to design the tow handle of the subject Cooler to guard against the dangers posed by its tow handle during its ordinary, foreseeable use – such as being slide out of a bear box.

34. The design defect in the tow handle existed at the time the Cooler left Defendant's possession and was introduced into the stream of commerce.

35. Plaintiff's purchase and use of the Igloo Cooler was the very type of use that Defendant intended and foresaw when designing and marketing the product.

36. Defendant expected and intended the subject Igloo Cooler to reach consumers, including Plaintiff, without any substantial changes or modifications from the condition in which it was sold.

37. Due to the defective design of the subject Coolers tow handle, the Cooler failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

38. Further, a reasonable consumer would not expect that the design of the tow handle of the subject Cooler would allow a consumer's digits to be pinched between the tow handle and Cooler during the normal, foreseeable use of the product.

39. The dangerous nature of the Igloo Cooler's tow handle design was not open or obvious and could not have been reasonably detected by Plaintiff or any reasonable consumer prior to use.

40. As a direct and proximate result of Defendant's defective design of the tow handle of its Coolers, including the subject Cooler, the Plaintiff in this case suffered injuries and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, and all such other relief as the Court deems proper.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE/NEGLIGENT PRODUCTS LIABILITY – NEGLIGENT DESIGN DEFECT**

41. At all relevant times, Defendant Igloo Products Corp. was engaged in the design, manufacture, assembly, marketing, distribution, and sale of the subject Cooler.

42. Defendant has a duty of reasonable care to market and sell non-defective Coolers that are reasonably safe for their intended uses by consumers, such as Plaintiff.

43. Defendant failed to exercise ordinary care in the design of its Coolers in that Defendant knew or should have known that said Coolers created a high risk of unreasonable harm to the Plaintiff and consumers alike due to the dangers posed by its tow handle under ordinary use.

44. Specifically, due to the defective design, the Cooler failed to operate safely and effectively in a foreseeable and intended manner in that ordinary,

reasonable consumer would not expect that the design of the handle of the subject Cooler would allow a consumer's digits to be pinched between the tow handle and Cooler during the normal, foreseeable use of the product – for example, while sliding the Cooler out of a bear box.

45. Defendant was negligent in the design of its Coolers in that, among other things, it:

a. Designed the tow handle of the subject Cooler in a manner that would allow a consumer's digits to be pinched between the tow handle and Cooler during the normal, foreseeable use of the product; creating an unreasonably high likelihood that a user of the subject Cooler would become injured by the subject Cooler in the course of its foreseeable use;

b. Failed to properly design and sell the tow handle of the Coolers, despite having extensive knowledge that the aforementioned injuries could and did occur;

c. Failed to adequately test the tow handle of its Coolers; and

d. Failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiffs' injuries and damages.

46. Plaintiff's injuries were not caused or contributed to by any negligence or fault of Plaintiff.

47. As a direct and proximate result of Defendant's negligence and the negligent design of its Coolers, including the subject Cooler, the Plaintiff in this case suffered injuries and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, and all such other relief as the Court deems proper.

**INJURIES & DAMAGES**

48. As a direct and proximate result of Defendant's negligence and wrongful misconduct as described herein, Plaintiff has suffered and will continue to suffer physical and emotional injuries and damages including past, present, and future physical and emotional pain and suffering as a result of the incident. Plaintiff is entitled to recover damages from Defendant for these injuries in an amount which shall be proven at trial.

49. As a direct and proximate result of Defendant's negligence and wrongful misconduct, as set forth herein, Plaintiff has incurred and will continue to incur the loss of full enjoyment of life and disfigurement as a result of the incident. Plaintiff is entitled to recover damages for loss of the full enjoyment of life and disfigurement from Defendant in an amount to be proven at trial.

50. As a direct and proximate cause of Defendant's negligence and wrongful misconduct, as set forth herein, Plaintiff has and will continue to incur expenses for medical care and treatment, as well as other expenses, as a result of the crush injury he suffered as a result of the incident. Plaintiff is entitled to recover

damages from Defendant for his past, present and future medical and other expenses in an amount which shall be proven at trial.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all the claims asserted in this Complaint so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

A. That Plaintiff has a trial by jury on all of the claims and issues;

B. That judgment be entered in favor of the Plaintiff and against Defendant on all of the aforementioned claims and issues;

C. That Plaintiff recover all damages against Defendant, general damages and special damages, including economic, non-economic to compensate the Plaintiff for his injuries and suffering sustained because of the use of the Defendant's defective Cooler;

D. That all costs be taxed against Defendant;

E. That prejudgment interest be awarded according to proof; and

F. That this Court awards any other relief that it may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

Respectfully submitted,

**JOHNSON BECKER, PLLC**

Date: September 11, 2026

*/s/ Lisa A. Gorshe, Esq.*
Lisa A. Gorshe, Esq. (FL #122180)
444 Cedar Street, Suite 1800
Saint Paul, MN 55101
(612) 436-1800 / (612) 436-1801 (fax)
lgorshe@johnsonbecker.com

***Attorneys for Plaintiff***

United States
CONSUMER PRODUCT SAFETY COMMISSION

# Igloo Recalls More Than One Million 90 Quart Rolling Coolers Due to Fingertip Amputation and Crushing Hazards




Recalled Igloo 90QT Flip & Tow Rolling Cooler in Tactical Gray Body and Deep Slate Stone Lid



**Name of Product:**

Igloo 90 Qt. Flip & Tow Rolling Coolers

**Hazard:**

The tow handle can pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards.

**Remedy:**
Replace

**Recall Date:**
February 13, 2025

**Units:**

About 1,060,000 (In addition, about 47,000 in Canada and 23,000 in Mexico)

## Consumer Contact

Igloo toll-free at 888-943-5182 from 8 a.m. to 5 p.m. ET Monday through Friday, email at igloo90qt@sedgwick.com, or online at www.igloo90qtrecall.expertinquiry.com or http://www.igloocoolers.com and click on "Recall Information" at the top of the page for more information.

# Recall Details

### In Conjunction With:



### Description:

This recall involves Igloo 90 Qt. Flip & Tow Rolling Coolers manufactured prior to January 2024. The date of manufacture is imprinted on the bottom of the cooler in a circular pattern with an arrow pointing to the month of manufacture and the last two digits of the year of manufacture inside the circle.

The recalled coolers have a tow handle. “IGLOO” is printed on the side of the coolers. The coolers were sold in multiple body and lid color combinations, some of which are pictured above. The following cooler models with tow handles are included in the recall. The model number is located on labels affixed to the bottom of the cooler.

<table>
<tr><th>Model/SKU #</th><th>Description</th><th>Date Codes</th></tr>
<tr><td>34143</td><td>LATITUDE 90 ROLLER</td><td>07/2021 – 12/2023</td></tr>
<tr><td rowspan="2">27019</td><td>MAXCOLD LATITUDE 90 ROLLER</td><td rowspan="2">11/2020 – 12/2023</td></tr>
<tr><td>POWERADE</td></tr>
<tr><td>34202</td><td>MAXCOLD 90 ROLLER</td><td>07/2021 – 12/2023</td></tr>
<tr><td>34241</td><td>LATITUDE 90 ROLLER MAXCOLD</td><td>07/2021 – 12/2023</td></tr>
<tr><td>34389</td><td>LATITUDE 90 ROLLER</td><td>08/2021 – 12/2023</td></tr>
<tr><td>34424</td><td>LATITUDE 90 ROLLER</td><td>10/2019 – 12/2023</td></tr>
<tr><td>34488</td><td>LATITUDE 90 ROLLER MAXCOLD</td><td>03/2019 – 12/2023</td></tr>
</table>

| Model/SKU # | Description | Date Codes |
|---|---|---|
| 34506 | LATITUDE 90 ROLLER | 08/2021 – 12/2023 |
| 34527 | LATITUDE 90 ROLLER | 09/2019 – 12/2023 |
| 34547 | LATITUDE 90 ROLLER MAXCOLD | 09/2019 – 12/2023 |
| 34553 | LATITUDE 90 ROLLER MAXCOLD | 09/2019 – 12/2023 |
| 34577 | LATITUDE 90 ROLLER | 09/2019 – 12/2023 |
| 34578 | LATITUDE 90 ROLLER | 09/2019 – 12/2023 |
| 34591 | LATITUDE 90<br>ROLLER MAXCOLD | 11/2019 – 12/2023 |
| 34608 | LATITUDE 90<br>ROLLER MAXCOLD | 12/2019 – 12/2023 |
| 34619 | LATITUDE 90 ROLLER | 01/2020 – 12/2023 |
| 34624 | LATITUDE 90 ROLLER<br>MAXCOLD | 01/2020 – 12/2023 |
| 34689 | MAXCOLD LATITUDE 90<br>ROLLER | 03/2020 – 12/2023 |
| 34724 | MAXCOLD LATITUDE 90<br>ROLLER | 09/2020 – 12/2023 |
| 34734 | LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34750 | LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34752 | MAXCOLD LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34775 | LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34776 | ECOCOOL LATITUDE 90 ROLLER | 10/2020 – 12/2023 |

| Model/SKU # | Description | Date Codes |
|---|---|---|
| | MAXCOLD | |
| 34789 | MAXCOLD LATITUDE 90<br>ROLLER | 11/2020 – 12/2023 |
| 34799 | LATITUDE 90 ROLLER | 12/2020 – 12/2023 |
| 34800 | MAXCOLD LATITUDE 90 ROLLER | 01/2021 – 12/2023 |
| 34818 | MAXCOLD LATITUDE 90 ROLLER | 03/2021 – 12/2023 |
| 34841 | LATITUDE 90 ROLLER MAXCOLD | 05/2021 – 12/2023 |
| 34844 | SPORTSMAN 90 LATITUDE ROLLER | 04/2021 – 12/2023 |
| 34869 | LATITUDE 90 ROLLER | 06/2022 – 12/2023 |
| 34993 | MAXCOLD LATITUDE 90 ROLLER | 07/2023 – 12/2023 |
| 34999 | LATITUDE 90 ROLLER | 08/2023 – 12/2023 |
| 35003 | MAXCOLD 90 QUART ECO ROLLER | 06/2023 – 12/2023 |
| 35019 | MAXCOLD LATITUDE 90 ROLLER | 07/2023 – 12/2023 |
| 35044 | MAXCOLD LATITUDE 90 | 10/2023 – 12/2023 |
| 35045 | MAXCOLD LATITUDE 90 | 10/2023 – 12/2023 |
| 35052 | LATITUDE 90 ROLLER | 10/2023 – 12/2023 |
| 35053 | LATITUDE 90 ROLLER | 10/2023 – 12/2023 |
| 35054 | LATITUDE 90 ROLLER | 10/2023 – 12/2023 |
| 35065 | LATITUDE 90 ROLLER MAXCOLD | 11/2023 – 12/2023 |
| 49870 | LATITUDE 90 ROLLER | 09/2018 – 12/2023 |
| 49928 | LATITUDE 90 ROLLER | 08/2019 – 12/2023 |
| 49937 | LATITUDE 90 | 08/2018 – 12/2023 |

| Model/SKU # | Description | Date Codes |
|---|---|---|
| | ROLLER | |
| 49938 | LATITUDE 90 ROLLER | 09/2018 – 12/2023 |
| 50680 | MAXCOLD LATITUDE 90 QUART | 09/2023 – 12/2023 |

### Remedy:

Consumers should immediately stop using the recalled coolers and contact Igloo for a free replacement handle.

### Incidents/Injuries:

The firm has received 12 reports of fingertip injuries, including fingertip amputations, bone fractures, and lacerations.

### Sold At:

Costco, Target, Academy, Dick’s and other stores nationwide, and online at Amazon.com, Igloocoolers.com, and other websites from January 2019 through January 2025 for between $80 and $140.

### Manufacturer(s):

Igloo Products Corp., of Katy, Texas

### Manufactured In:

United States

### Recall number:

25-136

Note: Individual Commissioners may have statements related to this topic. Please visit www.cpsc.gov/commissioners to search for statements related to this or other topics.

Recall Complaint

If you are experiencing issues with a recall remedy or believe a company is being non-responsive to your remedy request, please use this form and explain the situation to CPSC.